UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENEFICIAL PINES AT
WARRINGTON, LLC,

     Plaintiff,

v.                            CASE NO. 8:22-cv-1351-SDM-CPT

MG GTC MIDDLE
TIER II, LLC, et al.,

     Defendants.

_____/

**<u>ORDER</u>**

In this removed action, Beneficial Pines at Warrington, LLC, (the general partner) sues (Doc. 1-1) MG GTC Middle Tier II, LLC, and MG Affordable Master, LLC (the limited partners); Hunt Capital Partners, LLC (the limited partners' agent); and Pines at Warrington Limited Partnership (the limited partnership). The general partner alleges that the limited partners breached the limited partnership agreement and breached an option contract embedded in the agreement. Also, the general partner alleges that the limited partners' agent tortiously interfered with each contract by unjustifiably causing the limited partners to breach each contract. After removing (Doc. 1) the action, the defendants move (Doc. 9) to dismiss the limited partners' agent. The general partner moves (Doc. 23) to remand.

## BACKGROUND

In 2005, the general partner and the limited partners' predecessors-in-interest formed the limited partnership "to develop, construct, maintain, [and] operate . . . a 160-unit affordable housing development." (Doc. 1-1 at 1)  The partnership agreement confers on the general partner  a "buyout option" that allows the general partner to purchase for a nominal fee the entire limited partnership interest of each limited partner.  The general partner attempted to exercise this option and tendered the purchase price to the limited partners, who (allegedly at their agent's urging) claimed "material errors" and rejected the general partner's attempt to exercise the option. (Doc. 1-1 at 21)  According to the complaint, the limited partners' claims "were incorrect, contrary to the plain language of the [partnership agreement], and [lacked] a valid basis."  After tendering the option's purchase price to the limited partners, the general partner attempted to sell the apartment complex owned by the limited partnership, but the limited partners (again allegedly at their agent's urging) "objected to the listing of the [d]evelopment for sale" and claimed a right to prohibit the general partner from selling any property of the limited partnership.

In a five-count complaint (Doc. 1-1) filed in Florida state court, the general partner sues the limited partners, the limited partners' agent, and the partnership. Counts I and II claim that the limited partners breached the partnership agreement and the option by refusing to honor the general partner's exercise of the option. (Doc. 1-1 at 23–26)  Count III requests a declaration that the general partner "properly exercise[ed]" the buyout option and that the general partner, as sole owner

- 2 -

of the partnership's assets "has the right to list, solicit offers for, and sell the [d]evelopment without the [l]imited [p]artners' consent." (Doc. 1-1 at 26–28) Count IV requests an injunction directing the partnership to sell the development.[1] Finally, Count V claims that the limited partners' agent tortiously interfered with each contract by causing the limited partners to breach each contract. (Doc. 1-1 at 30–32) Specifically, the complaint alleges that the limited partners' agent "acted outside the scope of its authority and responsibilities" and "acted solely with ulterior purposes; that is, to personally benefit and enrich itself."

The defendants remove (Doc. 1) the action and invoke federal diversity jurisdiction under 28 U.S.C. 1332. Moving (Doc. 23) to remand, the general partner asserts two arguments against diversity jurisdiction. First, the general partner argues that the parties lack diversity because both the general partner and the partnership are Florida citizens. (Doc. 23 at 22–24) Second, the general partner argues that the defendants fail to invoke diversity because the defendants fail to demonstrate (or even allege) the citizenship of the limited partners' agent. (Doc. 23 at 14–21) In response, the defendants urge disregarding the citizenship of both the partnership and the limited partners' agent or severing the claims against both defendants under Rule 21, Federal Rules of Civil Procedure. Thus, the defendants conclude, the

---

[1] Beneficial asserts no claim against the partnership but rather argues that an injunction against the partnership is necessary to avoid "imminent, irreparable harm" from the MG defendants' alleged breach of the partnership agreement. (Doc. 1-1 at 28–29)

partnership's citizenship is no bar to diversity and the defendants need not demonstrate the citizenship of the limited partners' agent.

## DISCUSSION

Under *Rolling Greens MPH, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004), a removing defendant bears the burden of invoking federal jurisdiction. If a removing defendant invokes diversity jurisdiction, the defendant must demonstrate that the parties are completely diverse. In other words, the defendant must establish the citizenship of each party and demonstrate that no defendant is a citizen of the same state as any plaintiff. If any party is an unincorporated entity, such as a limited partnership or an LLC, *Rolling Greens MHP, L.P.*, 374 F.3d at 1022, requires the defendant to "list the citizenship of all the members of the [unincorporated entity]."

As *Navarro Savings Association v. Lee*, 446 U.S. 458, 460 (1980), notes, "[T]he 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy.'" A district court must disregard the citizenship of a "nominal" or "formal" party as well as a party fraudulently joined "solely . . . to defeat federal diversity jurisdiction." *Henderson v. Wash. Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). Thus, a removing party bears no burden to demonstrate the citizenship of a nominal, formal, or fraudulently joined party.

The defendants insist that the partnership and the limited partners' agent must be disregarded to determine diversity. First, the defendants argue that the partnership is a nominal party "with no real interest" in this action. (Doc. 25 at 7–11)

- 4 -

Second, the defendants argue that the partnership and the limited partners' agent are fraudulently joined.  (Doc. 25 at 11–13, 14–16)  Finally, to preserve jurisdiction, the defendants argue that the partnership and the limited partners' agent warrant severance under Rule 21, Federal Rules of Civil Procedure. (Doc. 25 at 13–14, 17–19)

The defendants are correct that diversity exists despite the partnership's Florida citizenship because the partnership "is merely a nominal party and not a real party in interest."  (Doc. 25 at 7)  According to *Thermoset Corp. v. Building Materials Corp. of America*, 849 F.3d 1313 (11th Cir. 2017), "'[t]he ultimate test' for whether a defendant is nominal is 'whether in the absence of the defendant, the [c]ourt can enter final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to [the] plaintiff.'" 849 F.3d at 1317 (quoting *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressman & Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir. 1970).

Attempting to demonstrate that the partnership is a real party in interest, the general partner primarily relies on *Wesley Housing Development Corp. of Northern Virginia v. SunAmerica Housing Fund 1171*, 577 F. Supp. 3d 448 (E.D. Va. 2021), which concludes that a partnership constitutes a real party in interest in a similar dispute about a contractual buyout in a low-income housing partnership.  In *Wesley*, the partnership agreement confers on the general partner an option to purchase the apartment complex — property of the partnership.  Attempting to exercise the option, the general partner sued to "compel the [p]artnership to sell a housing development according to the specific terms of the [option]."  *Wesley*, 577 F. Supp. 3d at 459.

- 5 -

Because "[the general partner] cannot obtain the relief [it] seek[s] without suing the [p]artnership" for specific performance, *Wesley* concludes that the partnership constitutes a real party in interest and that "the [p]artnership's citizenship must be considered in assessing whether diversity jurisdiction exists."

Unlike *Wesley*, the partnership agreement in this action confers on the general partner an option to purchase the limited partnership interests from the limited partners and confers no option to purchase the property of the partnership. Enforcement of the option would neither affect any property owned by the partnership nor compel or forbid any act by the partnership. The partnership is not a party to the option contract, asserts no ownership of the disputed partnership interests, has committed no alleged misconduct, [2] and otherwise asserts no control over or legal or property interest in this action. In the limited partnership's absence, an order could afford the general partner complete relief that "would not be in any way unfair or inequitable." Accordingly, the partnership is a nominal party whose citizenship the law disregards in assessing diversity of citizenship among the parties.

The limited partners' agent, however, is a real party in interest whose diverse citizenship the defendants must demonstrate. Attempting to justify the failure to allege or demonstrate the citizenship of the limited partners' agent, the defendants

---

[2] As the defendants note (Doc. 25 at 11 n.5), the general partner asserts no claim for relief against the limited partnership. Count IV requests an injunction directing the partnership to sell the apartment complex but states no cognizable claim for relief against the partnership. An injunction is a remedy, not a claim for relief. *Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1288 (M.D. Fla. 2009), *aff'd* 451 Fed. Appx. 862 (11th Cir. 2012). The general partner's claims are remediable by enforcement of the option contract.

principally argue that the claim against the agent constitutes fraudulent joinder.  To establish that a claim against a defendant constitutes fraudulent joinder, the removing defendants must demonstrate "by clear and convincing evidence . . . that there is 'no possibility' that [the plaintiff] 'can establish a cause of action against the resident defendant.'"  *Henderson v. Wash. Nat. Ins. Co.*, 4454 F.3d 1278, 1281 (11th Cir. 2006) (emphasis omitted) (quoting *Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962); *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

In this action, the general partner sues the limited partners' agent for tortious interference with the partnership agreement and with the option.  The general partner claims that the agent, "acted outside the scope of its authority and responsibilities" by causing the limited partners to repudiate the general partner's exercise of the option.  Further, the general partner alleges that in causing the limited partners to repudiate the option, the agent "acted solely with ulterior purposes; that is, to personally benefit and enrich itself," and "acted without an honest belief that its actions would benefit the [l]imited [p]artners and would be in the [l]imited [p]artners best interest."  By causing the limited partners to "intentionally breach the [partnership agreement] and the [o]ption," the general partner concludes, the agent tortiously interfered with each contract and "needlessly expos[ed] the [l]imited [p]artners to legal liability."  (Doc. 1-1 at 31)

Attempting to demonstrate that the general partner cannot possibly establish a cause of action against the limited partners' agent, the defendants insist that two privileges protect the agent's interference with each contract and thus bar the tortious

interference claim.  First, the defendants argue that tortious interference requires conduct by an "outside party" and "'[a]n agent of a corporate party to a contract, acting within [its] capacity and scope as an agent, [is not] a separate entity outside of the contractual relationship.'"  (Doc. 8 at 8) (quoting *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 525 So. 2d 673, 676 (Fla. 1st DCA 1991) (alteration in original).  Second, the defendants claim that the agent's conduct enjoys the protection of the "financial-interest privilege," which (according to the defendants) holds: "[A]ctivities taken to safeguard or promote one's own financial[] and contractual interests are entirely non-actionable."  (Doc. 25 at 16) (quoting *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA) (alteration in original).[3]  And even if neither privilege protects the agent, the defendants conclude, the general partner fails to state a claim for tortious interefence because the complaint merely "parrot[s] the legal standard from applicable case law" and offers no "factual allegations" plausibly suggesting that the limited partners' agent interfered with either contract.  (Doc. 8 at 8–9)

As the general partner demonstrates in the motion (Doc. 23) to remand, however, each of the defendants' arguments fails.  First, the defendants misstate *Ethyl Corp.*'s "financial-interest privilege."  Under *Ethyl Corp.*, "activities taken to safeguard or promote one's own financial[] and contractual interests are entirely non-

---

[3] Responding (Doc. 25 at 16) to the motion to remand, the defendants correctly note the alteration to the quote from *Ethyl Corp.*. In the motion (Doc. 8 at 9) to dismiss, however, the defendants offer the same quote from *Ethyl Corp.* but omit the brackets around the first letter. The resulting quote suggests that *Ethyl Corp.* observes a categorical privilege, a false suggestion as discussed below. The omission likely results from an innocent oversight, but this error demonstrates why lawyers must practice scrupulous diligence to avoid accidentally injecting into a paper a material misstatement of law.

actionable" only "so long as improper means are not employed."  In other words, *Ethyl Corp.* recognizes a qualified privilege rebuttable by the allegation that the defendant employed improper means to protect its financial interests.  Similarly, the qualified privilege accorded to "a party that is integral to a business relationship," such as an agent of a party to the contract, "'carries with it the obligation to employ means that are not improper.'"  *Lake v. Aetna Life Ins. Co.*, 2021 WL 2649234, at *6 (M.D. Fla. 2021) (Covington, J.) (quoting *Morsani v. Major League Baseball*, 663 So. 2d 653, 657 (Fla. 2d DCA 1995)).

Accordingly, the general partner can overcome both asserted privileges by alleging that the limited partners' agent employed improper means, such as "the purposeful causing of a breach of contract."  *McCurdy v. Collis*, 508 So. 2d 380, 384 (Fla. 1st DCA 1987).  Throughout the complaint, the general partner alleges that the agent unjustifiably caused the limited partners to "intentionally breach the [partnership agreement] and the [o]ption," and alleges that the agent "acted outside the scope of its authority and responsibilities."  Accordingly, the complaint includes allegations that, if proven, overcome a qualified privilege.

Finally, the insistence that the complaint fails to state a claim is irrelevant under *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001), which notes that "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." As the general partner demonstrates in the motion (Doc. 23) to remand and in the response (doc. 24) to the defendants' motion to

dismiss, the complaint enjoys at least "the possibility" of stating a claim against the limited partners' agent.  The limited partners' agent is not fraudulently joined.

Also, in the motion (Doc. 8 at 10–12) to dismiss and in the response (Doc. 25 at 17–19) to the motion for remand, the defendants argue that the limited partners' agent is not a required party and thus "[can] be dismissed under Rule 21."  But the defendants offer no justification supporting severance.  The claim against the limited partner's agent "arises from the same transaction or occurrence" as the claims against the limited partners; the agent's severance would result in duplicative litigation over the same issues, including whether the limited partners breached either contract; and the agent's dismissal would prejudice the general partner's interests in this action.  Even if Rule 21 permits severance,[4] these considerations militate decisively against severance in this action.  *See Malibu Media, LLC v. Does 1–28*, 295 F.R.D. 527, 533 (M.D. Fla. 2012) ("A district court has broad discretion when deciding whether to sever claims under Rule 21 and may consider factors such as judicial economy,

---

[4] Citing *Ralli-Coney, Inc. v. Gates*, 528 F.2d 572, 575 (5th Cir. 1976), and *Anderson v. Moorer*, 372 F.2d 747 (5th Cir. 1967), the defendants argue that Rule 21 permits a district court to "dismiss[] a dispensable party 'to preserve diversity jurisdiction.'" (Doc. 25 at 17)  But *Ralli-Coney, Inc.*, approves a district court's severing a defendant to preserve diversity and avoid dismissing an action originally filed in federal court. Similarly, *Anderson* reverses a district court's refusing to sever a non-diverse defendant and dismissing an action originally filed in federal court. Both decisions accord with Rule 21's peremptory command against dismissing an action because of a joinder defect.

Neither decision suggests that a district may or must ignore 28 U.S.C. 1447(c)'s command to remand an action "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." The defendants offer no support for the suggestion that a defendant may improperly remove an unremovable action and rest on Rule 21 to sever a properly joined defendant to retroactively create diversity. Indeed, *Payroll Management, Inc. v. Lexington Insurance Co.*, 815 F.3d 1293, 1298–99 (11th Cir. 2016), suggests that in a removed action a district court may create diversity by severing a party that "'does not have a real and substantial stake in the litigation' and thus 'is not a real party in interest.'" In other words, the severed party must be nominal—not just dispensable. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (approving in a removed action severance of a defendant that "[has] no real connection with the controversy").

case management, prejudice to parties, and fundamental fairness."); *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 566, 580 (E.D.N.Y. 1999) (resolving a severance motion by considering, among other factors, "whether the claims arise out of the same transaction or occurrence[,] whether the claims present some common questions of law or fact," and "whether prejudice would be avoided if severance were granted").

## CONCLUSION

Because the limited partners' agent is a "real party in interest" and properly joined as a defendant, *Rolling Greens MHP, L.P.*, 374 F.3d at 1022, requires the defendants to establish the agent's citizenship by "list[ing] the citizenships of all the members of [the agent]." Because the defendants — repeatedly and despite the general partner's motion for remand — decline to demonstrate or even allege the citizenship of the agent's members, the defendants fail to properly invoke diversity jurisdiction. Accordingly, the motion (Doc. 23) for remand is **GRANTED**. Because the defendants enjoyed a reasonable basis to believe that neither the partnership nor the limited partner's agent effected any change to diversity, the request for an attorney's fee and costs is **DENIED**.

This action is **REMANDED** to the circuit court for Sarasota County, Florida. The clerk must mail a certified copy of this order to the clerk of the circuit court in Sarasota County and must close the case.

ORDERED in Tampa, Florida, on December 8, 2022.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE